# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY M. LENNARTZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-894 |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | Judge Cathy Bissoon |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 7) will be granted, and Defendant's Motion for Summary Judgment (Doc. 10) will be denied.

Plaintiff Amy M. Lennartz ("Lennartz") protectively applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on October 8, 2008, alleging that she was "disabled" as of that date. (R. at 9, 95-96, 102-104). Pennsylvania's Bureau of Disability Determination denied the applications on April 30, 2009. (R. at 52-61). Lennartz responded on May 16, 2009, by filing a timely request for an administrative hearing. (R. at 62-63). On August 25, 2010, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") David J. Kozma. (R. at 38). Lennartz, who was represented by counsel, appeared and testified at the hearing. (R. at 40-46). Alina Kurtanich ("Kurtanich"), an impartial vocational expert, also testified at the hearing. (R. at 9, 46-48). In a decision dated September 15, 2010, the ALJ determined that Lennartz was not "disabled" within the meaning of the Social Security Act. (R. at 6-16).

On October 18, 2010, Lennartz sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 4-5). The Appeals Council denied the request for review on May 3, 2012, thereby making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner") in this case. (R. at 1-3). Lennartz commenced this action on June 28, 2012, seeking judicial review of the Commissioner's decision. (Docs. 1 & 2). Lennartz and the Commissioner filed motions for summary judgment on December 4, 2012, and February 4, 2013, respectively. (Docs. 7 & 10). The parties' cross-motions for summary judgment are now ripe for disposition.

Lennartz was born on February 17, 1982. (R. at 15). She was enrolled in Catholic elementary schools while completing grades one through seven. (R. at 161). Before starting the eighth grade, Lennartz transferred to a public school in the Shaler Area School District. (R. at 161). Due to persistent absences, she was required to repeat the eighth grade. (R. at 161). After spending some time at Mars Area High School,[1] Lennartz transferred back to the Shaler Area School District and enrolled at Shaler Area High School. (R. at 118). She graduated in 2000. (R. at 118). During the course of her educational career, Lennartz had an "individualized education program" ("IEP") developed pursuant to the Individuals with Disabilities Education Act ("IDEA"). (R. at 152-171); 20 U.S.C. §§ 1412(a)(4), 1414(d).

On January 17, 2001, Lennartz started to work for a mental health center. (R. at 114). That position required her to interact with patients. (R. at 114). She had to lift and carry patients four to five times per day. (R. at 115). Her time in that position ended on November 25, 2003, because of a disagreement that she had with her supervisor. (R. at 114, 121, 202). Lennartz took

---

[1] A treatment note provided by Dr. Madhavan Thuppal, a treating psychiatrist, states that Lennartz spent some time in a "residential treatment facility" called the "Mars Home." (R. at 231). Lennartz was apparently sent to the facility because of her repeated failure to attend classes. (R. at 231).

2

a similar job with a group home on January 14, 2004. (R. at 121). She held that position until November 30, 2004. (R. at 114, 121). She quit that job after being "insulted" by her supervisor. (R. at 202). After a six-month period of unemployment, Lennartz spent six months working as a customer service representative for a temporary agency. (R. at 114, 121). She apparently was terminated from a few short-term jobs in 2007, due to her inability to arrive for work on time. (R. at 200).

Dr. Ann Bender, a licensed psychologist, started to treat Lennartz on July 12, 2007. (R. at 191). The treatment relationship continued until December 4, 2007, when a change in Lennartz's insurance coverage rendered her unable to afford further treatment.[2] (R. at 45, 191). Lennartz started to work for a collections agency on June 1, 2008. (R. at 114, 121). She was discharged on July 4, 2008, because of frequent absences. (R. at 113). Dr. Bender met with Lennartz on August 14, 2008, and encouraged her to apply for "county welfare services." (R. at 191). On September 10, 2009, Dr. Bender submitted a statement to Pennsylvania's Department of Public Welfare declaring Lennartz to be "temporarily disabled" for a period exceeding twelve months. (R. at 229-230).

On February 4, 2009, Dr. Bender reported that Lennartz had "marked" limitations in her abilities to understand, remember and carry out detailed instructions, make judgments concerning simple work-related decisions, interact appropriately with supervisors and co-workers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. (R. at 195). Lennartz's abilities to understand, remember and carry out short, simple instructions and interact appropriately with members of the general public were deemed to be "moderately" limited. (R. at 195). Dr. Bender

---

[2] Lennartz apparently attended fifteen therapy sessions during the intervening period of time. (R. at 198).

3

stated that Lennartz's behavioral problems would improve if she were to refrain from consuming alcoholic beverages. (R. at 196).

On March 5, 2009, Dr. Bender performed a consultative psychological evaluation of Lennartz in connection with her applications for DIB and SSI benefits. (R. at 199-211). In a medical source statement dated April 23, 2009, Dr. Bender generally reiterated the assessment that she had provided in her earlier statement of February 4, 2009. (R. at 195-196, 210-211). The only difference relating to functional restrictions was that, after completing the evaluation, Dr. Bender found Lennartz to be only "slightly" limited in her ability to understand and remember short, simple instructions. (R. at 210).

Dr. Jan Melcher, a non-examining psychological consultant, opined on April 24, 2009, that Lennartz was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (R. at 215). In the narrative portion of her consultative report, Dr. Melcher stated as follows:

> The claimant's basic memory processes are intact. She can understand, retain, and follow simple job instructions, *i.e.*, perform one and two-step tasks. Moreover, she would be able to maintain regular attendance and be punctual. She would not require special supervision in order to sustain a work routine. She is capable of asking simple questions and accepting instruction. Furthermore, she can function in production oriented jobs requiring little independent decision making. Stress exacerbates her symptoms. She has a history of impulsive behavior. Her frustration tolerance is low. She experiences social anxiety and discomfort around strangers. Also, she has a history of frequent panic attacks. She evidences some limitation in dealing with work stresses and public contact. Review of the medical evidence reveals that the claimant retains the abilities to manage the mental demands of many types of jobs not requiring complicated tasks.

(R. at 214). Lennartz's subjective complaints were deemed to be only "partially credible." (R. at 214).

At the hearing, Lennartz testified that she would experience anxiety whenever she was around a large number of people. (R. at 41). She expressed a reluctance to enter grocery stores when there were "[t]oo many people around." (R. at 43). Lennartz responded in the affirmative when asked whether she typically remained in her home. (R. at 43). She described her residence as her "comfort zone" and characterized herself as "homebound." (R. at 44).

Lennartz was found to be suffering from major depressive disorder, generalized anxiety disorder and a panic disorder. (R. at 11). These impairments were deemed to be "severe" under the Commissioner's regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ determined that Lennartz had the residual functional capacity to perform "low stress work" at all levels of exertion. (R. at 12). He defined "low stress work" as "simple, routine, repetitive work." (R. at 12, 14). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Lennartz could work as a cleaner, a laundry worker or an order filler. (R. at 15). Kurtanich's testimony established that these jobs existed in significant numbers in the national economy. (R. at 47).

In determining Lennartz's residual functional capacity, the ALJ accorded "little weight" to the "opinions of disability" provided by Dr. Bender. (R. at 13). He purported to give "significant weight" to Dr. Melcher's assessment. (R. at 14). Although the ALJ did not believe Lennartz to be "disabled," he acknowledged that her "emotional impairments" could reasonably "be expected to limit her ability to perform all but the simplest tasks." (R. at 14).

Lennartz raises two issues in support of her motion for summary judgment. First, she contends that the ALJ erred in failing to afford significant weight to the assessments submitted by Dr. Bender. (Doc. 8 at 4-14). Second, she maintains that the ALJ failed to account for

5

functional limitations relating to her "social functioning." (*Id.* at 14-19). Both of these arguments are premised on the idea that the ALJ's residual functional capacity assessment is not "supported by substantial evidence." 42 U.S.C. § 405(g).

At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is typically satisfied through the introduction of vocational expert testimony. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity, unless the question eliciting that testimony accounts for all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is omitted from an administrative law judge's hypothetical question to a vocational expert, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Testimony provided in response to a hypothetical question that does not include the functional limitations contained in the ultimate residual functional capacity assessment fails to satisfy the Commissioner's burden of production, even if the underlying assessment is not challenged. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005). In the same vein, a defect in the residual functional capacity assessment necessarily undermines the sufficiency of testimony provided in response to a hypothetical question which directly corresponds with that assessment. *Id.* Both of these defects are present in this case.

In his decision, the ALJ defined the term "low stress work" to mean "simple, routine, repetitive work." (R. at 12, 14). This "definition" was never conveyed to Kurtanich at the hearing. Instead, the ALJ simply asked for "representative examples" of "low stress" jobs. (R. at 47). In this respect, the hypothetical question was "not sufficiently descriptive" to limit Kurtanich's consideration to jobs requiring the performance of only "the simplest tasks." *Burns*, 312 F.3d at 123; (R. at 14). Consequently, Kurtanich's testimony failed to satisfy the Commissioner's burden of production even if the accuracy of the ALJ's residual functional capacity assessment is assumed. *Rutherford*, 399 F.3d at 554, n. 8.

In any event, the ALJ's assessment of Lennartz's residual functional capacity is not "supported by substantial evidence." 42 U.S.C. § 405(g). The documentary record indicates that Lennartz lost several jobs because of conflicts with her supervisors. (R. at 202). Dr. Bender found Lennartz to be "markedly" limited in her ability to interact appropriately with supervisors and co-workers. (R. at 195, 210). Dr. Melcher stated that Lennartz would experience "social anxiety and discomfort around strangers," and that she had some degree of limitation in the area of "public contact." (R. at 214). Lennartz testified that exposure to large groups of people would exacerbate her anxiety. (R. at 41). She expressed a desire to remain home and avoid going to grocery stores. (R. at 43). Despite the uncontradicted evidence suggesting that Lennartz could not tolerate unlimited interactions with supervisors, co-workers, and members of the general public, the ALJ's residual functional capacity assessment included no restrictions relating to contact with others. (R. at 12).

An administrative law judge may not reject competent medical evidence solely on the basis of "his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). The opinion of a treating source may be rejected outright

7

"only on the basis of contradictory medical evidence." *Plummer*, 186 F.3d at 429. Where competent medical evidence supports a claimant's subjective complaints, those complaints "may not be disregarded unless there exists contrary medical evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). In light of the undisputed documentary and testimonial evidence establishing limitations relating to Lennartz's ability to deal with supervisors, co-workers, and members of the general public, the ALJ had no evidentiary basis for declining to include corresponding restrictions in his residual functional capacity assessment. (R. at 41, 43, 195, 202, 210, 214).

An immediate award of benefits is justified only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F. Supp.2d 414, 432 (W.D. Pa. 2010). That standard is not satisfied in this case. When Lennartz's counsel was given an opportunity to question Kurtanich at the hearing, she did not ask whether an individual with limitations in his or her "social functioning" could work as a cleaner, a laundry worker or an order filler. (R. at 47-48). Therefore, it is not clear from the record whether the limitations wrongfully omitted by the ALJ would have made a dispositive difference. Under these circumstances, the proper remedy is a remand to the Commissioner for further development of the record.[3]

The parties disagree as to whether it was permissible for the ALJ to credit the opinion of Dr. Melcher over that of Dr. Bender. The United States Court of Appeals for the Third Circuit generally looks with disfavor on administrative decisions that reject the opinions of treating sources in favor of those put forth by non-examining consultants. *Brownawell v. Commissioner*

---

[3] The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

8

*of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008).  Nevertheless, there are circumstances in which assessments supplied by non-examining sources are sufficiently probative of a claimant's ability to work to outweigh competing assessments provided by his or her treating physicians. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361-362 (3d Cir. 2011); *Brown v. Astrue*, 649 F.3d 193, 196-197 (3d Cir. 2011); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).  In this case, the Court has no occasion to consider whether Dr. Bender's findings could be reasonably rejected on the basis of Dr. Melcher's report.  Because neither Dr. Bender nor Dr. Melcher found Lennartz to be capable of engaging in the range of work activities permitted under the ALJ's residual functional capacity assessment, it is clear that the Commissioner's decision in this case must be vacated.  *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).

Lennartz must be afforded an opportunity to be heard during the course of the upcoming administrative proceedings.  *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010).  The probative value of any medical opinion must be judged in relation to the evidentiary record as a whole.  *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999).  For this reason, the weight accorded to the opinions of Dr. Bender and Dr. Melcher may depend on evidence submitted to the Commissioner at a later date.  It will be up to the Commissioner to reliably assess Lennartz's abilities and limitations *on a function-by-function basis*, and to determine whether the restrictions resulting from her impairments preclude the performance of substantial gainful activity.  *Santiago v. Barnhart*, 367 F. Supp.2d 728, 733 (E.D. Pa. 2005).  Consideration must be given to each functional limitation resulting

from Lennartz's medical condition, including those that do not relate to her "social functioning."[4]

## II. ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 7**) is **GRANTED**, and Defendant's Motion for Summary Judgment (**Doc. 10**) is **DENIED**. The decision of the Commissioner of Social Security is hereby **VACATED**, and the case is **REMANDED FORTHWITH** for further consideration of Lennartz's applications for DIB and SSI benefits.

April 4, 2013

s\Cathy Bissoon
Cathy Bissoon
United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[4] For instance, Dr. Bender found Lennartz to be "markedly" limited in her ability to respond appropriately to changes in a routine work setting. (R. at 195, 210). The ALJ never explained his reasons for not restricting Lennartz to a range of work involving relatively few workplace changes. (R. at 12). By focusing on Lennartz's difficulties in dealing with others, the Court does not mean to suggest that no other limitations are relevant to this case.